UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ARNOLD D. DUNCHOCK,

        Plaintiff,

v.

ROBERT P. YOUNG, JR., ROBERT L.
AGACINSKI, and MARK A. ARMITAGE,

        Defendants.
_____/

Case No.  1:12-CV-195

HON.  GORDON J. QUIST

**OPINION REGARDING DEFENDANTS' MOTIONS TO DISMISS
AND PLAINTIFF'S MOTION TO STAY DISCIPLINE**

Plaintiff, Arnold D. Dunchock, seeks relief from this Court pursuant to 42 U.S.C. § 1983 for alleged violations of his federal constitutional rights.  Each Defendant has filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b).  (Docket nos. 9, 17 & 19.)  For the reasons set forth below, the Court will grant Defendants' Motions to Dismiss.

**I.  BACKGROUND**

On March 1, 2012, Plaintiff filed a Verified Complaint alleging, among other things, that 1.) Robert P. Young, Jr., Chief Justice of the Michigan Supreme Court, as a representative of the Michigan Supreme Court, violated Plaintiff's Fifth Amendment right to due process of law and Fourteenth Amendment right to equal protection of the laws; 2.)  Robert L. Agacinski, employee of the Michigan Attorney Grievance Commission, retaliated against Plaintiff in violation of Plaintiff's First Amendment right to freedom of speech and violated Plaintiff's Fifth and Fourteenth Amendment rights by knowingly prosecuting false complaints; and 3.) Mark A. Armitage, employee of the Michigan Attorney Discipline Board (Board), wrongly released to the press information

related to Plaintiff's disciplinary proceedings. The factual allegations for all of the claims arise out of a series of Michigan attorney disciplinary proceedings spanning the years 2009 to 2011. On July 20, 2010, a Board panel suspended Plaintiff from the practice of law in Michigan for one year beginning August 2010, and ordered him to pay restitution in the amount of $12,416.04 to his former clients. (Docket no. 1, Page ID 59; Ex. B, Docket no. 10-2, Page ID 141.) In his Complaint, Plaintiff asks this Court to "strike[] down the actions, policies, and procedures of the Defendants, as well as Michigan's Attorney Disciplinary System, as being unconstitutional," enjoin Defendants from prosecuting an ongoing disciplinary matter (case number 11-128-GA), and grant various damages and costs. (Docket no. 1, Page ID 33–34.) Plaintiff also requests that this Court find unconstitutional the Board's restitution assessment against Plaintiff because, among other things, the Board lacked jurisdiction to order Plaintiff to pay restitution. (*Id.* at 18–20.)

## II. DISCUSSION

### A. *Rooker-Feldman* Doctrine

Although 42 U.S.C. § 1983 enables a person whose federal constitutional rights have been violated by someone acting under the color of state law to sue in federal court, *see West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254–55 (1988), under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction to entertain "challenges to state court decisions in particular cases arising out of [state] judicial proceedings *even if those challenges allege that the state court's action was unconstitutional*," *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486, 103 S. Ct. 1301, 1317 (1983) (emphasis added); *see also Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S. Ct. 149, 150 (1923). Among the federal courts, only the United States Supreme Court may review such state court decisions on appeal. *Feldman*, 460 U.S. at 486, 103 S. Ct. at 1317. Specifically, the *Rooker-Feldman* doctrine "applies in those circumstances where a party initiates

2

an action in federal district court 'complaining of an injury *caused by* the state-court judgment and seeking review and rejection of that judgment.'" *In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009) (emphasis in original) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 1521–22 (2005)).

The *Rooker-Feldman* doctrine applies to two types of cases: 1.) direct attacks on the substance of a state court decision, and 2.) challenges to the procedures by which a state court arrived at its decision. *Anderson v. Charter Twp. of Ypsilanti*, 266 F.3d 487, 493 (6th Cir. 2001). However, the doctrine is confined to

> cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. [It] does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

*Exxon Mobil*, 544 U.S. at 284, 125 S. Ct. at 1521–22.

"The pertinent question in determining whether a federal district court is precluded under the *Rooker-Feldman* doctrine from exercising subject-matter jurisdiction over a claim 'is whether the source of the injury upon which plaintiff bases his federal claim is the state court judgment.'" *In re Cook*, 551 F.3d at 548 (quoting *Lawrence v. Welch*, 531 F. 364, 368 (6th Cir. 2008) (internal quotations omitted)). If the source of the plaintiff's injury is the state court decision, then the doctrine prevents a district court from asserting jurisdiction. *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). However, if there is "some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *Id.*

The facts of *In re Cook*, 551 F.3d 542, provide a useful comparison to the present case. In *Cook*, Ohio's Board of Commissioners on Grievances and Discipline conducted a panel hearing

3

regarding allegations that Cook, an attorney, had violated the Ohio Bar Association's Disciplinary Rules. *Id.* at 547. The panel employed disciplinary procedures similar to those in the present case—including taking witness testimony and affording Cook an opportunity to present evidence in her defense—and recommended that Cook be permanently disbarred. *Id.* After the Board of Commissioners adopted the panel's recommendations, the Ohio Supreme Court reviewed the findings and ordered Cook disbarred. *Id.* On the basis of the state proceedings, after an order to show cause why Cook should not be disbarred and a hearing, the federal court also entered an order disbarring Cook. *Id.* Cook appealed the federal district court's order. *Id.* The Sixth Circuit held that it lacked jurisdiction to hear Cook's due process challenge to the state proceedings under the *Rooker-Feldman* doctrine. *Id.* at 548. The Sixth Circuit observed, "the *Rooker-Feldman* doctrine applies here and precludes review of any claims arising directly out of Cook's state disbarment proceedings or the Ohio Supreme Court's disbarment order .... The proper forum in which to raise such claims was on direct appeal to the Supreme Court of the United States .... Cook cannot seek collateral review of her state disbarment proceedings in federal court." *Id.* (internal citations omitted).

      Similarly, in this case, Plaintiff requests that this Court find the state's disciplinary proceedings unconstitutional and vacate Plaintiff's restitution order. All of Plaintiff's claims relate to actions taken by employees of the Michigan Supreme Court, Michigan Attorney Grievance Commission, or Michigan Attorney Discipline Board pursuant to attorney disciplinary procedures under the rules promulgated by the Michigan Supreme Court and subject to the Michigan Supreme Court's review. *See* MCR 7.304(A); 9.122. In addition to Plaintiff's prayer for relief, the procedural history suggests that Plaintiff seeks this Court's review of the sufficiency of Michigan's attorney disciplinary procedures, not relief from independent constitutional violations. After the

Board panel issued its suspension and restitution report, Plaintiff filed a motion for a new trial, which was denied by the Board on August 25, 2010. Plaintiff also filed a complaint with the Michigan Supreme Court, requesting the Michigan Supreme Court to exercise superintending control over the Attorney Grievance Commission and the Board. The Michigan Supreme Court denied the request on September 10, 2010. The Board reviewed and affirmed the panel's suspension order on December 16, 2010, and the Board denied Plaintiff's motion for reconsideration on February 18, 2011. The Michigan Supreme Court also denied Plaintiff's application for leave to appeal on November 21, 2011. Only then did Plaintiff file the Complaint in this case.

Plaintiff's denial that this case is an appeal of the state proceedings is belied by his Complaint. For example, the Complaint asks the Court to find unconstitutional the restitution imposed by the state court on Plaintiff, and repeatedly argues that the disciplinary procedures were inadequate as a matter of due process. Thus, the Complaint presents both a direct attack on the substance of the state decision and a challenge to the procedures by which the state arrived at the decision. *See Anderson*, 266 F.3d at 493. The *Rooker-Feldman* doctrine denies federal district courts jurisdiction to decide either type of argument. *Id.* Because this Court finds that "[a]ny review of [Plaintiff's] constitutional claims would require review of the state court proceedings," thereby violating *Rooker-Feldman*, this Court lacks subject matter jurisdiction over Plaintiff's claims. *See Patmon v. Mich. Supreme Court*, 224 F.3d 504, 510 (6th Cir. 2000). Thus, for further review of his disciplinary proceedings, Plaintiff must petition the United States Supreme Court, pursuant to 28 U.S.C. § 1257, not federal district court.

**B.    Supplemental Jurisdiction**

The Court finds that all of Plaintiff's factual allegations fall within the confines of the *Rooker-Feldman* doctrine because they present challenges to the state court decision and sufficiency

of state procedures. However, even if this Court were to find that Plaintiff's claim against Defendant Armitage for wrongful release of information to the public arises independently of the state court proceedings, the Court declines to exercise supplemental jurisdiction.

"A district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996) (citing *Transcon. Leasing, Inc. v. Mich. Nat'l Bank of Detroit*, 738 F.2d 163, 166 (6th Cir. 1984)). In deciding whether to exercise its supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993) (affirming a district court's order granting summary judgment on a federal claim and dismissing state law claims without prejudice). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson*, 89 F.3d at 1254–55 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 619 n.7 (1988)); *see also* 28 U.S.C. § 1367(c) (stating that a district court may decline to exercise supplemental jurisdiction when the court has dismissed all claims over which it has original jurisdiction).

In this case, if Plaintiff states a claim against Armitage, it sounds in state tort law, rather than presenting a federal question. *See* 28 U.S.C. § 1331. Moreover, Plaintiff does not allege diversity of citizenship that would give this court jurisdiction. *See* 28 U.S.C. § 1332. Having dismissed Plaintiff's other claims for lack of subject matter jurisdiction, in this Court's judgment, the claim would be best resolved by a state court. *See* 28 U.S.C. § 1367. Therefore, the Court will dismiss Plaintiff's claim against Armitage without prejudice.

**C.     Abstention**

As the Supreme Court has noted, the *Rooker-Feldman* doctrine is "confined to ... cases brought by state court losers complaining of injuries caused by state-court judgments *rendered before the district court proceedings commenced*." *Exxon Mobil*, 544 U.S. at 284, 125 S. Ct. at 1521–22 (emphasis added). Thus, the doctrine precludes this Court from reviewing disciplinary decisions already rendered by Michigan state courts. However, in his Complaint, Plaintiff also requests that this Court enjoin Defendants from "prosecution of 11-128-GA," an ongoing disciplinary matter. Moreover, Plaintiff has moved this Court to stay ongoing disciplinary proceedings by the Michigan state courts. (Pl.'s Mot. to Stay Discipline, Docket no. 12.) For purposes of this ongoing matter, this Court will abstain from enjoining ongoing state court proceedings.

The United States Supreme Court has held that, "absent extraordinary circumstances federal courts should not enjoin pending state criminal prosecutions," *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 364, 109 S. Ct. 2506, 2516 (1989) (citing *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746 (1971)). The Supreme Court has extended the *Younger* abstention doctrine to bar federal courts from interfering in state civil suits and administrative proceedings. *See, e.g.*, *id.* at 369–70, 109 S. Ct. at 2519; *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 627 & n.2, 106 S. Ct. 2718, 2722–23 & n.2 (1986). "The policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved." *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431, 102 S. Ct. 2515, 2521 (1982). A state has an important state interest in "proceedings necessary for ... the functioning of the state judicial system." *Id.*

"In the typical *Younger* case, the federal plaintiff is a defendant in ongoing or threatened state court proceeding seeking to enjoin continuation of those state proceedings." *Devlin v. Kalm*, 594 F.3d 893, 894 (6th Cir. 2010) (quoting *Crawley v. Hamilton Cnty. Comm'rs*, 744 F.2d 28, 30 (6th Cir. 1984)) (distinguishing between cases in which the federal plaintiff is a plaintiff, rather than a defendant, in the state proceedings). Noting its concerns for "comity and federalism," the Supreme Court has observed that it is "perfectly natural for [its] cases to repeat time and time again that the *normal* thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." *Ohio Civil Rights Comm'n*, 477 U.S. at 627, 106 S. Ct. at 2722 (emphasis in original).

In this case, Plaintiff is a respondent in ongoing attorney disciplinary proceedings in the Michigan state courts. Plaintiff specifically requests that this Court enjoin the state proceedings, both in his Complaint and Motion to Stay Discipline. Because the State of Michigan has an important state interest in regulating members of its state bar association, the policies underlying *Younger* are applicable to this case. Thus, applying the *Younger* doctrine, this Court will abstain from interfering with the state court proceedings. *See id.* Even if Plaintiff were to demonstrate that this Court's failure to enjoin the state proceedings would result in "irreparable injury," such a showing is "insufficient unless it is 'both great and immediate.'" *Younger*, 401 U.S. at 46, 91 S. Ct. at 751 (quoting *Fenner v. Boykin*, 271 U.S. 240, 243 46 S. Ct. 492, 493 (1926)).[1] Plaintiff has failed to establish that his case presents the "extraordinary circumstances" that would warrant federal intervention. *See Middlesex*, 457 U.S. at 431, 102 S. Ct. at 2521. Therefore, the Court will deny Plaintiff's Motion to Stay Discipline.

---

[1] Because Plaintiff did not file a motion for a preliminary injunction, this Court will not conduct a more detailed four-factor balancing test analysis. *See, e.g.*, *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997).

### III. CONCLUSION

For the foregoing reasons, this Court will grant Defendants' Motions to Dismiss (docket nos. 9, 17 & 19) and deny Plaintiff's Motion to Stay Discipline (docket no. 12). A separate order will issue.


Dated: December 13, 2012                             /s/ Gordon J. Quist
                                                                        GORDON J. QUIST
                                                                UNITED STATES DISTRICT JUDGE